IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF WISCONSIN

DAVID B. MERRITT, M.D.,

       Plaintiff,

v.

BLACK RIVER MEMORIAL HOSPITAL, INC.,

       Defendant.

Civ No. 10-cv-840

## DECLARATION OF DR. DAVID MERRITT

DAVID B. MERRITT, M.D. declares and states as follows:

1. I am competent to be a witness and have personal knowledge of the matters attested to herein.

2. From January 2006 until December 15, 2009, I was employed as an emergency room physician at the Black River Memorial Hospital ("Black River") which is located in Black River Falls, Wisconsin. Prior to starting work at Black River, I received an "Employment

DECLARATION OF DR. DAVID MERRITT - 1

S0380968.DOCX

Agreement." Attached to this Declaration as Exhibit "A" is a true and correct copy of the Agreement. Article III, section 3.2(viii), of the Agreement allows for termination without cause.

3. During my employ at Black River I also served in both the Army National Guard and, later, the U.S. Army Reserves.

4. On or about June 6, 2009, I was involuntarily activated and deployed to Konduz, Afghanistan. My military deployment was from June 6, 2009 through October 3, 2009.

5. Prior to deploying to Afghanistan, I gave my employer, Black River, notification of my pending mobilization. All told, I was on military orders for 98 days and spent the majority of that time treating injured soldiers in Afghanistan. Attached hereto as Exhibit "B" are true and correct copies of my orders.

6. I was honorably discharged from the Army on or about October 3, 2009. Attached hereto as Exhibit "C" is a true and correct copy of my Certificate of Discharge from Active Duty.

7. Following my re-deployment I informed Black River of my intent to return to work and, on October 8, 2009, I began working in the Emergency Room.

8. In late October 2009, Stan Gaynor, the Black River CEO, visited me in the Emergency Room. It was the middle of the day. I was working a shift. Mr. Gaynor sat down next to me at the "doctors desk" and began asking me about my future plans.

9. Since I had discussed my future plans with the Dr. Carol Martin, the Emergency Room director, earlier that month following my return to work, I took this to be a friendly follow up. During my talk with Dr. Martin, I told her that my tour in Afghanistan was difficult. I told

Dr. Martin that I had treated numerous wounded Soldiers during my tour and that four of those Soldiers died. I told Dr. Martin that I was in numerous firefights.

10. Accordingly, I told Dr. Martin that I only wanted to work my minimum shifts to fulfill my employment contract (6 per month), as I needed time to recover from my tour and did not want to work back-to-back shifts. Dr. Martin seemed quite upset at this. I was subsequently placed on back-to-back shifts.

11. I told Mr. Gaynor that my intentions were to remain at Black River for the long term. I told Mr. Gaynor that there was a possibility that I would be redeployed to Afghanistan. Mr. Gaynor told me that re-deploying was not acceptable and would not be tolerated.

12. On December 15, 2009, I was working the emergency room shift at the hospital. Toward the end of the shift, Mr. Gaynor asked if I had time to talk. I followed Mr. Gaynor outside of the ER into a nearby waiting room. Mr. Gaynor informed me that the hospital was exercising the "at-will" provision of my employment contract and terminating my employment.

13. Immediately thereafter Holly Winn, Vice President of Human Resources, arrived with a box of my personal belongings that Ms. Winn obtained from the "call room" -- the room where shift workers, like me, place their personal belongings during an extended 24-hour shift. Ms. Winn handed me the box.

14. I departed the hospital and went home. After arriving home, I opened the box and discovered a letter dated December 15, 2009, a true and correct copy of which is attached hereto as Exhibit "D." Attached to the letter was a "Separation Agreement and Release," which I did not sign, that is attached hereto as Exhibit "E."

15. Prior to December 15, 2009, I had no idea that I was subject to being terminated. Upon re-deployment in October 2009, I received no notice from anyone at Black River that anything I was doing or had done would subject me to termination.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

DATED this 14 day of OCT, 2011.

_____
DAVID B. MERRITT, M.D.

DECLARATION OF DR. MERRITT - 4