UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

DAVID B. MERRITT, M.D.,

      Plaintiff,

vs.                                                                                    Case No. 10-cv-00840-wmc

BLACK RIVER MEMORIAL HOSPITAL,
INC.,

      Defendant.

---

## DEFENDANT'S RESPONSE
## TO PLAINTIFF'S STATEMENT OF PROPOSED FACTS

---

Defendant, Black River Memorial Hospital, Inc., by its attorneys, PETERSON, JOHNSON & MURRAY, S.C., hereby submits its response to plaintiff's statement of proposed facts:

1.     Black River Memorial Hospital, Inc. ("Black River") is an incorporated non-stock business entity formed under the laws of the State of Wisconsin with its principal place of business located in Jackson County, Wisconsin.

Answer:     Admit that the proposed finding is true but deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.

2.     Black River employed Dr. David B. Merritt ("Dr. Merritt") as an emergency room physician beginning January 2006.

Answer:     Admit.

3.    Dr. Merritt was subject to an "Employment Agreement" between Dr. Merritt and Black River.

Answer:    Admit.

4.    From 1992 through present, Dr. Merritt has served as a commissioned officer in the Army National Guard or U.S. Army Reserve.

Answer:    Admit.

5.    On or about April 2, 2009, Dr. Merritt received orders from the U.S. Army involuntarily ordering Dr. Merritt to active duty in Afghanistan.

Answer:    Admit.

6.    The orders, which were dated April 2, 2009, required Dr. Merritt to report to active military duty "no later than 06 June 2009," and return on or about October 3, 2009.

Answer:    Admit.

7.    Black River admits that Dr. Merritt informed Black River that Dr. Merritt had been called to active duty with the U.S. Army.

Answer:    Admit.

8.    Dr. Merritt's active duty military service lasted more than 90 days.

Answer:    Admit.

9.      Black River admits that Dr. Merritt requested that Black River re-employ him and that Black River did in fact re-employ Dr. Merritt on October 8, 2009.

Answer:      Admit.

10.     Dr. Merritt was honorably discharged from his active duty military service.

Answer:      Admit.

11.     Black River admits that Dr. Merritt's active duty military service did not exceed five years in duration.

Answer:      Admit.

12.     In late October 2009, Stan Gaynor, the Black River CEO, visited Dr. Merritt in the Black River Emergency Room and asked Dr. Merritt about Dr. Merritt's future plans.

Answer:      Deny.  Mr. Gaynor recalls no such conversation with Dr. Merritt. (BRMH's Proposed Statement of Facts, ¶¶44-46)

13.     Dr. Merritt had previously discussed his future plans with Dr. Carol Martin, the Emergency Room director, earlier that month following Dr. Merritt's return to work.

Answer:      Admit that plaintiff discussed scheduling issues with Dr. Martin only. (BRMH's Proposed Statement of Facts, ¶43)

14.     During Dr. Merritt's talk with Dr. Martin, Dr. Merritt told her that his tour in Afghanistan was difficult; that Dr. Merritt had treated numerous wounded soldiers; that four of those soldiers died; and that Dr. Martin was in numerous firefights.

Answer:     Admit that the proposed finding of fact is true but deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.

15.     Dr. Merritt told Dr. Martin that Dr. Merritt only wanted to work the minimum shifts needed to fulfill the Agreement (6 per month) and did not want to work back-to-back shifts, as Dr. Merritt needed time to rest following his tour.  Dr. Merritt sensed that Dr. Martin seemed quite upset at what Dr. Merritt said.

Answer:     Deny.    Dr. Martin remained in e-mail communication with Dr. Martin concerning scheduling upon his return from his deployment.  When plaintiff was informed what the schedule would be upon his return, he did not send any objection to Dr. Martin.  Upon his return, plaintiff was frustrated with the schedule, and although Dr. Martin attempted to work with plaintiff about his frustrations, she documented the situation concerning the schedule and the fact that two other doctors had offered to help the plaintiff but that he refused.  The only request for time off from Dr. Merritt during this time revolved around his desire to see his daughter, who lived out-of-state.    (BRMH's Proposed Finding of Fact, ¶¶40-43)

16.     Dr. Merritt was subsequently placed on back-to-back shifts.

Answer:     Admit.

17.     Dr. Merritt told Mr. Gaynor that his intentions were to remain at Black River for the long term.

4

Answer:        Deny.   Mr. Gaynor recalls no such conversation with Dr. Merritt in October 2009.


18.      Dr. Merritt told Mr. Gaynor that there was a possibility that Dr. Merritt would be re-deployed to Afghanistan.

Answer:        Deny.  Mr. Gaynor does not recall ever being told by Dr. Merritt upon his return in October 2009 that there was a possibility he would be redeployed and, in fact, has not been redeployed since his return in October 2009.  (BRMH's Proposed Statement of Fact, ¶44)


19.      Mr. Gaynor told Dr. Merritt that re-deploying was not acceptable and would not be tolerated.

Answer:        Deny.  At no time upon plaintiff's return did Stan Gaynor tell plaintiff that any redeployment would be unacceptable or not tolerated by BRMH, nor does Stan Gaynor recall any conversation with plaintiff upon his return that plaintiff believed he would be redeployed.  (BRMH's Proposed Statement of Fact, ¶44)


20.      Black River admits "that on December 15, 2009 near the end of [Dr. Merritt's] emergency room shift at the hospital, Dr. Merritt was approached by hospital CEO Stan Gaynor and Vice President of Human Resources Holly Winn; that Mr. Gaynor and Ms. Winn met with [Dr. Merritt in private]; that Mr. Gaynor informed [Dr. Merritt], among other things, that the hospital was ending its relationship with [Dr. Merritt and Dr. Merritt's] last day of work was" December 15, 2009.

Answer:        Admit.

21.     During the December 15, 2009 meeting, Mr. Gaynor informed Dr. Merritt that Black River was exercising the "at-will" portion of Dr. Merritt's employment contract and was terminating him.

Answer:     Admit.

22.     Towards the end of the aforementioned conversation, Ms. Winn presented Dr. Merritt with a box of Dr. Merritt's personal belongings.

Answer:     Admit that the proposed finding of fact is true but deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.

23.     Upon returning home, Dr. Merritt opened the box that Ms. Winn handed him at the end of the above-referenced meeting.

Answer:     BRMH can neither admit nor deny this statement, as it has no knowledge of what Dr. Merritt did upon his return home from the hospital.  Notwithstanding, even if true, deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.

24.     The box contained a letter dated December 15, 2009 which stated, *inter alia*, "enclosed in this envelope is paperwork pertaining to your compensation and benefit continuation due to non-renewal of contract."

Answer:       Admit that the proposed finding of fact is true but deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.

25.     A "Separation Agreement and Release" was attached to the December 15, 2009 letter.

Answer:       Admit that the proposed finding of fact is true but deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.

26.     The "Separation Agreement and Release" referenced the "at-will" section of the Employment Agreement, Article III, § 3.2 (viii), as the reason for Black River's separation of Dr. Merritt.

Answer:       Admit that the proposed finding of fact is true but deny that the proposed finding is in any way relevant to the motion for summary judgment or to any triable issue of fact in this action.


27.     From Dr. Merritt's October 2009 re-deployment until Dr. Merritt met with Mr. Gaynor on December 15, 2009, no one at Black River gave Dr. Merritt notice that he was subject to termination.

Answer:       Deny, as BRMH not only provided Dr. Merritt written notification that his inappropriate behaviors could led to termination but such notification was also implied, as such conduct is not acceptable in a hospital environment. (BRMH Proposed Findings of Fact, ¶¶4, 6, 7, 9, 17-19, 26,

Respectfully submitted this 21st day of November, 2011.

> PETERSON, JOHNSON & MURRAY, S.C.
> Attorneys for Defendant, Black River Memorial
> Hospital, Inc.
>
> BY:     s/ Maria DelPizzo Sanders
>         Maria DelPizzo Sanders
>         State Bar No.:  1031037
>         Clayton L. Riddle
>         State Bar No.:  1023267
>         733 N. Van Buren, 6th Floor
>         Milwaukee, WI  53202-4792
>         Telephone:  (414)  278-8800
>         Fax:  (414)  278-0920
>         msanders@pjmlaw.com
>         criddle@pjmlaw.com

F:\DOCS\201\0093\00705249.DOC